

JM:PSS
F.# 2010R00059

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

MALCOLM STOCKDALE,
PINO BALDASSARRE and
ROBERT MOUALLEM,

       Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§ 371,
981(a)(1)(C), 1348,
1952(a)(3)(A), 2 and 3551
et seq.; T. 21 U.S.C., §
853(p) and T. 28 U.S.C., §
2461(c))

THE GRAND JURY CHARGES:

### INTRODUCTION TO ALL COUNTS

At all times relevant to this Indictment, unless otherwise indicated:

1.  Dolphin Digital Media, Inc. ("Dolphin") was a business that purported to be a creator of secure social networking websites for children. Beginning in or about July 2008, Dolphin was a publicly-traded corporation based in Miami, Florida, and its shares traded under the ticker "DPDM" on the Over The Counter Bulletin Board ("OTCBB"). Dolphin shares were securities registered under section 12 of the Securities Exchange Act of 1934.

2.  Defendant MALCOLM STOCKDALE was a substantial shareholder in Dolphin. As of the fall of 2009, STOCKDALE's holdings of shares in Dolphin were dispersed among several

nominee accounts that he controlled, including, but not limited to, (a) shares of Dolphin stock in an account in the name of IDS Systems, Inc. and (b) shares of Dolphin stock in an account in the name of STOCKDALE's wife.

3.  Defendant PINO BALDASSARRE was a substantial shareholder in Dolphin and served as Chief Executive Officer of Dolphin until March 2009, when he separated from the company.  At the time BALDASSARRE left Dolphin, his holdings of Dolphin shares were dispersed among several nominee accounts that he controlled, including, but not limited to, (a) shares of Dolphin stock in an account in the name of IDS Systems, Inc., (b) shares of Dolphin stock in a joint account held in the name of BALDASSARRE and another individual and (c) shares of Dolphin stock in an account in the name of BALDASSARRE's ex-wife.

4.  Defendant ROBERT MOUALLEM was a stock broker employed at Garden State Securities, in Old Bethpage, New York. Garden State Securities was a broker-dealer with its principal office in Red Bank, New Jersey.  Garden State Securities was a registered member of the Financial Industry Regulatory Authority. MOUALLEM held Series 7 (general securities representative), 55 (registered equity trader), and 63 (uniform securities agent) licenses.

-2-

## THE FRAUDULENT SCHEME

5.   Beginning in or about March 2009, and continuing through April 2010, the defendants MALCOLM STOCKDALE and PINO BALDASSARRE devised a scheme to sell their shares of Dolphin at inflated prices through John Doe, an individual whose identity is known to the Grand Jury.   John Doe told STOCKDALE and BALDASSARRE that he had access to a network of stock brokers with authority over discretionary accounts, into which shares of Dolphin stock could be sold at inflated prices without the brokerage clients' knowledge.   In furtherance of the scheme, STOCKDALE and BALDASSARRE agreed to pay John Doe a kickback of 30% of the intended purchase price at which John Doe would purchase STOCKDALE'S and BALDASSARRE'S Dolphin shares.

6.   In or about February 2010, the defendants MARTIN STOCKDALE and PINO BALDASSARRE introduced John Doe to the defendant ROBERT MOUALLEM.   Upon being apprised of the scheme, including the 30% kickback to John Doe, MOUALLEM agreed to assist in selling STOCKDALE's and BALDASSARRE's Dolphin shares by matching their sales of Dolphin shares with corresponding purchases of Dolphin shares from discretionary accounts that, MOUALLEM was told, were controlled by stock brokers who were working for, and expected recompense from, John Doe.

7.   In or about and between March 2010 and April 2010, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT

-3-

MOUALLEM, together with John Doe, orchestrated five "test transactions" that were to be a prelude to larger future transactions in which MOUALLEM would assist STOCKDALE and BALDASSARRE in liquidating their entire holdings in Dolphin at inflated prices. STOCKDALE and BALDASSARRE expressly stated their expectation to reap millions of dollars from the scheme.

8. On or about March 31, 2010, pursuant to the fraudulent plan, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM agreed to sell 20,000 Dolphin shares for a price per share of $0.298 for a total of $5,960, and to pay John Doe a 30% kickback of $1,788. On or about March 31, 2010, John Doe purchased 20,000 Dolphin shares; 15,000 of these Dolphin shares were purchased from STOCKDALE and BALDASSARRE and the other 5,000 Dolphin shares were purchased in the open market.

9. On or about April 1, 2010, pursuant to the fraudulent plan, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM agreed to sell 25,000 shares of Dolphin for a price per share of $0.35 for a total of $8,750, and to pay John Doe a 30% kickback of $2,625. On or about April 1, 2010 John Doe purchased 25,000 Dolphin shares; 20,000 of these Dolphin shares were purchased from STOCKDALE and BALDASSARRE and the other 5,000 Dolphin shares were purchased in the open market.

-4-

10. On or about April 5, 2010, pursuant to the fraudulent plan, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM agreed to sell 20,000 shares of Dolphin for a price per share of $0.375 for a total of $7,500, and to pay John Doe a 30% kickback of $2,250. On or about April 5, 2010, John Doe purchased all 20,000 shares, as planned, from STOCKDALE and BALDASSARRE.

11. On or about April 6, 2010, pursuant to the fraudulent plan, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM agreed to sell 20,000 shares of Dolphin for a price per share of $0.395 for a total of $7,900, and to pay John Doe a 30% kickback of $2,370. On or about April 6, 2010, John Doe purchased all 20,000 shares, as planned, from STOCKDALE and BALDASSARRE.

12. On or about April 6, 2010, pursuant to the fraudulent plan, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM agreed to sell a second tranche of 20,000 shares of Dolphin for a price per share of $0.395 for a total of $7,900, and to pay John Doe a 30% kickback of $2,370. On or about April 6, 2010 John Doe purchased 20,000 Dolphin shares; 15,000 of these Dolphin shares were purchased from STOCKDALE and BALDASSARRE and the other 5,000 Dolphin shares were purchased in the open market.

-5-

13.   On or about April 8, 2010, the defendant ROBERT MOUALLEM sent an e-mail to the defendant PINO BALDASSARRE setting forth the amount of Dolphin shares that had been sold during the test transactions and the respective prices for each sale. BALDASSARRE later forwarded this e-mail to the defendant MALCOLM STOCKDALE and others setting forth the amounts of the 30% kickbacks corresponding to the sales of Dolphin shares. STOCKDALE confirmed that he was in agreement with the amounts of the kickbacks.

14.   On or about April 9, 2010, the defendant PINO BALDASSARRE deposited $4,450.00 into a bank account controlled by John Doe to pay the kickbacks due on the March 31, 2010 and April 1, 2010 test transactions.

15.   On or about April 13, 2010, the defendant PINO BALDASSARRE deposited $6,990.00 into a bank account controlled by John Doe to pay the kickbacks due on the April 5, 2010 and April 6, 2010 test transactions.

16.   During the period of the "test transactions," the share price of Dolphin increased by 33.33% from the March 31, 2010 opening to the April 6, 2010 closing.

-6-

COUNT ONE
(Conspiracy to Commit Securities Fraud
and Violate the Travel Act)

17. The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between March 2009 and April 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM, together with others, did knowingly and willfully conspire to:

(a) execute a scheme and artifice (1) to defraud one or more persons in connection with the common stock of Dolphin and (2) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property in connection with the purchases and sales of Dolphin common stock, contrary to Title 18, United States Code, Section 1348; and

(b) travel in interstate and foreign commerce and use the mail and facilities in interstate and foreign commerce, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, specifically, commercial bribery, in violation of New York Penal Law Sections 180.00, 180.05 and 20.00, and thereafter to perform and attempt to perform acts to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of such unlawful activity, contrary to Title 18, United States Code, Section 1952(a)(3)(A).

19. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT

-7-

MOUALLEM, together with others, committed and caused to be committed, among others, the following:

## OVERT ACTS

(a)   On or about October 24, 2009, BALDASSARRE met with John Doe and others at a Holiday Inn in Queens, New York to discuss the fraudulent plan.

(b)   On or about October 30, 2009, STOCKDALE, who was in Canada at the time, participated in a phone call with John Doe and others to discuss the fraudulent plan.

(c)   On or about April 8, 2010, STOCKDALE, BALDASSARRE, MOUALLEM and others exchanged e-mails confirming the amounts of the kickback fees to be paid to John Doe.

(d)   On or about April 9, 2010, BALDASSARRE deposited $4,450.00 into a bank account in Florida to pay kickbacks to John Doe.

(e)   On or about April 13, 2010, BALDASSARRE deposited $6,990.00 into a bank account in Florida to pay kickbacks to John Doe.

(Title 18, United States Code, Sections 371 and 3551 <u>et seq</u>.)

### COUNTS TWO THROUGH SIX
(Securities Fraud Attempt)

20.   The allegations contained in paragraphs 1 through 16 are realleged and incorporated as if fully set forth in this paragraph.

-8-

21.    On or about the dates set forth below, within the
Eastern District of New York and elsewhere, the defendants
MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM, together
with others, did knowingly and intentionally attempt to execute a
scheme and artifice (1) to defraud one or more persons in
connection with the common stock of Dolphin and (2) to obtain, by
means of materially false and fraudulent pretenses,
representations, and promises, money and property in connection
with the purchases and sales of Dolphin common stock, as set
forth below:

| COUNT | DATE | NUMBER OF SHARES |
|-------|------|------------------|
| TWO | March 31, 2010 | 20,000 |
| THREE | April 1, 2010 | 25,000 |
| FOUR | April 5, 2010 | 20,000 |
| FIVE | April 6, 2010 | 20,000 |
| SIX | April 6, 2010 | 20,000 |

(Title 18, United States Code, Sections 1348, 2 and
3551 et seq.)

### COUNT SEVEN
(Travel Act Violation)

22.    The allegations contained in paragraphs 1 through
16 are realleged and incorporated as though fully set forth in
this paragraph.

-9-

23.   On or about and between April 8, 2010 and April
13, 2010, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants
MALCOLM STOCKDALE, PINO BALDASSARRE and ROBERT MOUALLEM, together
with others, did knowingly and intentionally use the mail and
facilities in interstate and foreign commerce, with intent to
promote, manage, establish, carry on and facilitate the
promotion, management, establishment and carrying on of unlawful
activity, specifically, commercial bribery, in violation of New
York Penal Law Sections 180.00, 180.05 and 20.00, and thereafter
did perform and attempt to perform acts to promote, manage,
establish, carry on and facilitate commercial bribery.

(Title 18, United States Code, Sections 1952(a)(3)(A),
2 and 3551 <u>et</u> <u>seq.</u>)

### CRIMINAL FORFEITURE ALLEGATION

24.   The United States hereby gives notice to the
defendants that, upon their conviction of any of the offenses
charged in Counts One through Seven, the government will seek
forfeiture in accordance with Title 18, United States Code,
Section 981(a)(1)(C) and Title 28, United States Code, Section
2461(c), which require the forfeiture of any property
constituting or derived from proceeds obtained directly or
indirectly as a result of such offenses.

-10-

25.   If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due

diligence;

b.   has been transferred or sold to, or deposited

with, a third party;

c.   has been placed beyond the jurisdiction of

the court;

d.   has been substantially diminished in value;

or

e.   has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

-12-

**INFORMATION SHEET**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1.  Title of Case: **United States v. MALCOLM STOCKDALE, PINO BALDASSARRE AND ROBERT MOUALLEM**

2.  Related Magistrate Docket Number(s): N/A

3.  Arrest Date: **N/A**

4.  Nature of offense(s): ☒   Felony
                          ☐   Misdemeanor

5.  Related Cases - Title and Docket No(s). (Pursuant to Rule 50.3 of the
    Local E.D.N.Y. Division of Business Rules): _____

    _____

6.  Projected Length of Trial:   Less than 6 weeks   (X)
                                  More than 6 weeks   ( )

7.  County in which crime was allegedly committed: QUEENS
    (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.  Has this indictment/information been ordered sealed?        (X) Yes  ( ) No

9.  Have arrest warrants been ordered?                          (X) Yes  ( ) No

LORETTA E. LYNCH
UNITED STATES ATTORNEY

By:   _____

Patrick Sean Sinclair
Assistant U.S. Attorney
718-254-6402